## THE MADISON INSURANCE COMPANY *v.* WILLIAM C. FELLOWES, AND OTHERS.

1. In a policy of insurance, containing a condition that "no insurance shall be considered binding until the payment of the premium," an acknowledgment of its receipt is conclusive, for the purpose of giving effect to the policy, as binding, from the time of delivery; the subsequent non-payment of the premium will not avoid it, unless it is expressly so provided.

2. When the policy contains a condition that "all claims under this policy are barred unless prosecuted within one year from the date of loss," that condition is performed, if, within the year, a suit is brought, in good faith, for the purpose of enforcing the claim; and if the assured, for good cause, abandon that suit, and promptly bring another, although after the year has elapsed, he is not barred of his right to recover.

3. Where the policy contains a clause, "that in case of any other insurance upon the said property, not notified to said company and mentioned in or indorsed upon this instrument," then the policy shall be void, which is relied on as a defense, it is error to admit parol evidence of conversations between the parties, prior to, or cotemporaneous with, the delivery of the policy, to prove that the defendant, by the delivery of the policy, without indorsement of the prior insurance, having verbal notice thereof, has waived the contract requiring the indorsement. In a case framed to correct an omission in the policy, on the ground of mistake, or fraud, such evidence is admissible.

4. Distinction, in the application of this rule, between conditions *precedent* and *subsequent.* In the latter, it is enough, if the assured give notice in fact of the subsequent insurance, and was ready and willing to have the indorsement made.

5. Where the premises insured consist of two distinct buildings, separately covered by prior insurance, and the subsequent policy covers both, it constitutes a case of double insurance, within the meaning of the condition.

GENERAL TERM.—Proceeding in error to reverse a judgment rendered for the defendant in error, at special term of April, A. D. 1855.

*Lincoln, Smith & Warnock,* for plaintiff in error.

*King, Anderson & Sage,* for defendants in error.

SPENCER, J., delivered the opinion of the court.

This is a petition in error to reverse a judgment rendered at special term. The original action was brought by Fellowes, Johnston & Co., upon a policy of insurance issued by the plaintiff in error, on the 13th day of January, 1851, whereby they caused to be insured, for the period of one year next ensuing, Sanderson Robert, for account of whom it might concern, in the sum of $3,500, " upon a certain frame building in Cincinnati, commonly known as E. Wilson's pork-house."

The petition contained the usual averments of payment of premium, the loss by fire within the term insured, due proof and notice thereof, and refusal of payment by defendant. Among other provisions of the policy were the following : " In case of any other insurance upon the said property, not notified to said company, and mentioned in, or indorsed upon this instrument, then this policy shall be void and of no effect; and if any subsequent insurance shall be made upon the property herein insured, which, with the sum or sums already insured, shall, in the opinion of said company amount to an *over-insurance,* the said company reserve to themselves the right of canceling this policy by paying to the insured the premium, *pro rata,* for the unexpired portion of the term of this insurance, and in case of loss or damage, the insured shall not be entitled to recover of said company any greater proportion thereof than the amount hereby insured shall bear to the whole amount

insured on said property." Also, the following: "All claims under this policy are barred unless prosecuted within one year from the date of loss." Also, the following: "No insurance shall be considered as binding until the payment of the premium."

The matters of defense relied upon in the answer, and controverted at the trial, were three-fold: First, that the premium for insurance had not been paid at the time of the loss. Second, that the present action had not been prosecuted within a year from the time of the loss. Third, that at the time of the issuing of the policy sued on, Robert had two other policies of insurance upon the same premises, then in full force, one issued by the New York Protection Insurance Company, in his favor, for the sum of $1,500, and the other by the Orleans Insurance Company, for the sum of $2,000, of which " he had given the defendant no notice; and had not caused notice of the same to be indorsed upon the policy issued by the defendant; and that the defendant had no other notice thereof."

The case was submitted to the court, who found for the plaintiffs, assessing their damages at $4,268.83. The defendant thereupon moved for a new trial, on two grounds: First, that the court erred in receiving certain testimony, objected to at the trial. Second, that the finding of the court was contrary to the law and evidence. The motion being overruled, a judgment was entered up for the plaintiffs, to reverse which is the object of the present petition. A bill of exceptions, embodying all the evidence received on the trial of the cause, and the exceptions of counsel thereto, accompanies the record; the particulars of which need not be set forth, except so far as necessarily applicable to the points now decided and involved in the defense set up.

I. With regard to the first branch of the defense set up, the non-payment of the premium, the evidence on the part of the plaintiffs was, that no demand of premium was ever made by the defendant, or its agent, upon Robert, but that Robert had a claim against the defendant, for another

loss, and passed the premium to their credit on that account, and that the agent of the company accounted with them for the amount of the premium. The evidence on the part of the defendant was, that the premium was charged to Robert on the books of the company, and, as appears by them, was not in fact paid up to the time of the loss, and that Robert, after the loss, acknowledged its non-payment.

We deem it unnecessary to determine whether upon the weight of evidence the premium appears to have been paid in fact, or not. It was treated and considered by the parties, as paid at the time of the delivery of the policy, and an acknowledgment of its receipt is expressed in the policy. This acknowledgment is made for the purpose of giving effect to the policy, as binding, from the time of delivery, and must be held conclusive for that purpose. 20 Barb. 475, *New York Central Ins. Co.* v. *National Protection Ins. Co.*, and cases cited; 1 Campb. 532; 3 Taunt. 493; 1 Sandf. S. C. 58; 1 Phil. on Insurance, §§514, 515; 2 Ibid, 2116, 1849, 1993.

If the policy be *binding* at the time of the delivery, the subsequent non-payment of the premium will not avoid it, unless expressly provided for. The decision of the court, therefore, upon this point of the defense, was clearly right.

II. With regard to the second branch of the defense, viz: that the present action was not brought agreeably to the requirement of the policy, within one year from the date of the loss. The language of the policy in this respect, as already quoted, is "all claims, under this policy, are barred, unless *prosecuted* within one year from the date of loss." The facts, as applicable to this defense, are, that the insurance was taken out by Robert for the benefit of the present plaintiffs, and the policy assigned to them, with the assent of the company indorsed upon it, before the loss happened. Within the year, after the loss, the plaintiffs instituted an action, in the name of Robert, for their use, in the (former) Superior Court of Cincinnati, to recover the amount of their loss, in pursuance of the terms of the policy. This action was subsequently

transferred, at the instance of the defendant, under the act of Congress, to the Circuit Court of the United States for the district of Ohio, where it remained pending until, and at the time of, the institution of the present action, when it was voluntarily discontinued. Although the present action is, in form, between different parties from the former, yet for all substantial purposes it must be regarded as being between the same, the real party prosecuting, and the real plaintiff in interest, in both cases being identical. Without undertaking to decide the question whether the condition of the policy, which makes it necessary to prosecute a claim, arising under it, within a year from the date of a given loss, is valid and binding upon the parties, or whether it be void, as opposed to public policy, a question upon which there is certainly a conflict of authority, we are all perfectly satisfied that this provision of the policy is reasonably complied with by the *bona fide* institution of a suit, within the time limited, for the purpose of enforcing the claim; and if the party should afterward discover that he has brought his suit before the wrong forum, or in an improper mode, he may abandon the same, instituting, at once, a new action, and thereby making a continuous claim, or prosecution, of his right, without abandoning or forfeiting such right altogether. The terms of this condition, being restrictive of common right, must be construed strictly. They do not require that the same prosecution, that is, the same action, once begun, shall be continued to its completion, and when once determined, whether by non-suit or otherwise, the right shall be wholly barred, but that the right itself, or claim, shall be prosecuted within the year, and continuously made; whether in the same, or a different action, is not material. The prosecution of the claim, under the policy, was the following of it up by action. This construction saves to the company all the advantage intended to be secured to them, by the requisition of a prompt suit on the part of the insured; that is, notice to prepare their defense before the evidence of it may be lost, while, at the same time, it saves the insured

from the casualties which must frequently arise from being compelled to bring a hasty suit.

The prosecution of the claim, in the present action, was properly commenced, within the time limited; it was continuously made, though not in the same action, yet without interruption of the same demand. The defendant has been in no wise prejudiced by the change of action; and we are satisfied, that in this respect, the condition of the policy has been substantially complied with, and that the decision of the court, at special term, upon this branch of the defense, was right.

III. The third and chief error alleged to exist, in this record, is that which relates to the third ground of defense, viz: that at the time of the issuing of the policy sued on, Robert had other insurances upon the same premises, not notified to the defendant, at the time of issuing the policy, and as required by one of its conditions, which declares "that in case of any other insurance upon the said property, not notified to said company, and mentioned in or indorsed upon this instrument, then this policy shall be void and of no effect." The facts upon this point, as we gather them from the evidence in the bill of exceptions, are these: The premises described in the plaintiffs' policy, and insured as " Wilson's pork-house," consisted of two buildings; one of frame, used as a rendering-house, and the other of brick, used for a smoke-house, both under the same roof—when spoken of entire, called Wilson's pork-house; when spoken of separately, called Wilson's "smoke" and "rendering" houses. At the time of making the application for this insurance, Robert held, for the benefit of the plaintiffs, an unexpired policy of insurance, issued to him by the Orleans Insurance Company, for the sum of two thousand dollars, covering the frame building, above described, and known as Wilson's "rendering"-house, and another unexpired policy of insurance, issued to him by the New York Protection Insurance Company, for the sum of fifteen hundred dollars, covering the brick build-

ing, above described, and known as Wilson's "smoke"-house. Neither of these insurances was notified, by him, to the defendant, at the time of his making his application; nor are they in anywise mentioned in, or indorsed upon, the policy issued to him by the defendant. At the trial, it was proven on the part of the plaintiffs, that when Robert called upon Hall, the agent of the defendant, to effect this insurance, Hall was just about leaving his office. Robert then said to him that he had effected other insurances upon the premises, to the amount of $3,500, but did not state where nor how; that is, neither the offices nor the amounts insured in each, nor the premises covered by each. That Hall requested Mr. Chew, an employee in the office, to make out a policy, which was accordingly done, making no allusion to these prior policies; and in this mode, a day or two afterward, the policy was delivered to Robert. This evidence as to notice, was objected to by the defendant as incompetent to prove fact of notice, but the objection was overruled and the testimony received, to which an exception was taken. The evidence was received, not on the ground of mistake, or of correcting the policy, for there was no averment in the pleadings, nor any pretense in the case, of any agreement between the parties for the indorsement of these prior insurances upon the policy, or that the same was omitted by mistake or fraud, so as to require the policy to be corrected, but upon the ground that the defendant, by the delivery of the policy, without indorsement, having verbal notice of the prior insurances, had waived the contract requiring such indorsement. In this, it seems to us, after a careful examination of the subject, that an error has been committed. Had the plaintiffs' case been framed with a view to correct a mistake, or omission, in the policy, the testimony would certainly have been competent; but as it was, it simply went to set up a parol agreement, in contradiction to an agreement in writing. By the terms of the policy, made and accepted as the contract between the parties, it was expressly declared to be the agreement of the parties that it should not have effect, in case there was any other

insurance upon the premises, not mentioned in or indorsed upon the policy itself. By the proof offered it was sought to establish that such was not the agreement of the parties, but that, at the time of making the policy, the agreement was that it should have effect notwithstanding the indorsement was not made. Now it will not be denied that the notification of the fact itself, that is, the existence of the previous insurance, may be made, and is a material part of the contract, not only as limiting the liability of the company, in case of loss, but as furnishing a safeguard against over-insurance. If so, the manner in which such notification shall be given, or the evidence of it preserved, may be made equally material. The object of the latter requisition is that the evidence may be permanent and certain; not liable to loss or to misapprehension; not liable to fraud or to perjury. It must be borne in mind, that, in all cases, insurances are effected by corporations, through agents, who are constantly changed. Fire policies are renewed from year to year, by a simple indorsement of the receipt of the annual premium, and are thus continued for several years. Evidence resting within the knowedge of agents only, is transitory and liable to be lost, and it is, therefore, of great importance that it should be preserved by an indorsement on the policy itself. In 16 Pet., 510, *Carpenter* v. *The Providence Washington Insurance Company,* Judge Story, speaking of the importance of such clauses in policies, says: "The public have an interest in maintaining their validity, and giving them full effect and operation;" and adds that they should not be "construed with a close and scrutinizing jealousy, when they may be complied with, in all cases, by ordinary good faith, and ordinary diligence on the part of the insured."

The question made in this case, arose, and was decided, in 7 Cushing, 175, *Barrett* v. *The Union Mutual Fire Insurance Company.* There a by-law of the company, annexed to, and made part of, the policy, provided, that "all policies which may issue from this company, to cover property previously insured, shall be void, unless such previous insurance be

expressed in the policy at the time it is insured." On the trial, proof having been given of a prior insurance, in favor of the plaintiffs, not expressed in the policy, the plaintiffs, in reply, offered to show, by parol, that the fact of such insurance was communicated to the defendant, prior to making the policy; that it was understood the same should remain, and stand upon the property, and with that understanding the policy was delivered; that the policy was prepared by the defendant's agent, and delivered to the insured, as the latter supposed, according to such understanding; that he did not read it then, nor afterward; that nothing was said to him about the prior insurance not being mentioned therein, and he did not know it was omitted until after the loss. The evidence was rejected as inadmissible, upon the express ground " that its manifest effect would be to substitute an oral contract for that contained in the written instrument." A portion of the remarks, in that case, may be profitably read, as particularly germain to the present case:

"It was said in the argument, that there was a mistake, or fault, on the part of the defendant; that the policy was prepared by the defendant; and that they should have expressed in it the prior policy, and omitted to do so by design, or by willful negligence; and that the assured did not read it, but supposed the prior policy was expressed. The assured certainly had abundant opportunity to read the policy, and need not have accepted it, if it was not satisfactory to him, according to the agreement of the parties. If the assured accepted the policy without looking at it, or knowing what it was, he would seem himself to be liable to the charge of culpable negligence, made against the defendants. But if from mistake, or fraud, an agreement is so defective, that instead of conveying the meaning of the parties, it expresses a different or opposite intent, if relief can be given at all, it must be sought exclusively in a court of equity. A court of law must act on the agreement as it is; it can not strike out or change any part, or add anything to it, so as to contradict or vary the agreement contained in the written instrument. The parol

evidence, offered in this case, was therefore clearly not admissible; and taking the policy as it is, the plaintiffs can not recover."

But to authorize a relief in equity, a case of fraud, or mistake, must be made by the bill, or appear from the pleadings in the cause, otherwise the evidence can not be received.

So in 16 Peters, 510, *Carpenter* v. *The Prov. Wash. Ins. Co.* (above cited), although the question did not directly arise upon the admissibility of the evidence, yet it was necessarily disposed of by the charge of the court, holding "that actual notice of prior insurance, not indorsed upon the policy, was not sufficient to charge the defendants," notwithstanding the payment of premium, because the policy in such case was, by its own terms, declared absolutely void.

There are many other cases in the books illustrative of the principle, that parol evidence of facts occurring at the time of making the policy, is not admissible to explain its terms, or to show a waiver of its conditions. Of these, reference may be had to 10 Barb. 285, *Kennedy* v. *The St. Lawrence Co. Mutual Ins. Co.*; 4 Hill, 340, *Alston* v. *The Mech. Mutual Ins. Co.*; 22 Conn. 235, *Sheldon & Co.* v. *The Hartford Fire Ins. Co.*; and 21 Conn. 19, *The Glendale Wool. Co.* v. *The Protection Ins. Co.* In the first of these, a condition of the policy required the insured to state the number of buildings within ten rods of the premises insured. The application was, in fact, drawn up by the agent of the company, on a personal inspection of the premises, who knew of the existence of a certain building within the space limited, not mentioned in the application. It was held that this circumstance did not affect the defense to the action.

In *Sheldon & Co.* v. *The Hartford Ins. Co.*, parol evidence was held inadmissible to prove that, at the time of making the application, the agent of the company had knowledge of a fact required to be stated therein by one of the conditions of the policy, but omitted to be set forth. And in the kindred case of *The Glendale Wool. Co.* v. *The Protection Ins. Co.*, where the evidence was rejected, the court take occasion to express the importance of maintaining these conditions in

their integrity, in the following terms, p. 31 : "The contract of insurance, as all know, is one of indemnity, upon the terms and conditions specified in the policy. It is a peculiar contract—one of hazard purely. The insurer undertakes, for a small sum, to guaranty the insured against loss, or damage, upon the exact terms and conditions agreed on, and upon no other. The party called upon to pay, in case of loss, may therefore justly insist upon the fulfillment of those terms, and, if the plaintiffs can bring themselves fairly within the conditions of the policy, they are entitled to recover; otherwise not, however well meaning and upright they may have been." And again, with regard to the admissibility of the evidence, p. 37 : "The rule is well established, that where parties have put their engagements in writing, in such terms as import a legal obligation, it is conclusively presumed that the whole engagement was reduced to writing. After this, to permit parol evidence of prior or contemporaneous conversation, or circumstances, or usage, etc., in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme."

The only case we have found seemingly in opposition to these is, that in 5 Rawle, 342, *Moliere* v. *The Penna. Fire Ins. Co.* There, one of the conditions of the policy provided: "That a misdescription of the premises, in a matter material to the risk, should avoid the policy." The plaintiff, in fact, furnished a particular and correct description of the premises to the secretary of the company, to be inserted in the policy; but the secretary, by mistake, omitted a material part. It was held in Pennsylvania. (where there is no court of equity for the correcting of mistakes), that the mistake might be corrected in an action at law, founded upon the policy. Whether the facts appeared in the pleading, or not, does not appear. But the proof offered there was to show a mistake, and correct the policy—not to show a different agreement from that contained in the policy. And the court add: "That the evi-

dence to support such an allegation ought to be clear and satisfactory."

We have been referred by the defendants' counsel, with great confidence, to the cases of *Harris* v. *The Ohio and The Protection Insurance Companies*, reported in 5 Ohio, 466, and Wright, 544, 548, as settling a different rule. The result of those cases, however, was simply to establish the proposition that, in the case of subsequent insurance, it was not absolutely necessary for the insured to cause an indorsement of it to be made on the policy; that it was enough if the insured gave notice in fact of such insurance, and was ready and willing to have the indorsement made. Here, the insurance being binding at the beginning, the company could not avail themselves of the breach of condition subsequent, occasioned by their own omission, to avoid the contract. But of conditions precedent, the rule is uniform that they must be complied with, or the contract does not take effect.

But it is claimed, on the part of the defendants in error, that the case presented was not one of double insurance, and therefore did not fall within the provisions of the policy requiring notice to be given of such prior insurance. The ground of this claim assumes that the object of the provision is to enforce contribution from the parties to other policies; and there can be no contribution unless the same subject-matter is at risk in the different policies. Here, it is said, the policies do not cover the same subject—that of the defendants embracing the whole building destroyed, and those of the other companies embracing only the several parts. This position is certainly taken and maintained in 5 Hill, 298, *The Howard Ins. Co.* v. *Scribner;* and upon the same ground, that contribution can not be enforced. But this is far from furnishing the only or chief reason for the adoption of this provision in the policy. Another, and a strong motive for its adoption, is to prevent the temptation to carelessness, or fraud, which might arise in cases of over-insurance, a temptation equally strong, whether the

whole property is insured alike in different offices, or whether it is only doubly covered in its different parts.

In opposition to the case of *The Howard Ins. Co.* v. *Scribner* (above cited), stands that of 5 Maryland, 165, *The Associated Firemen's Ins. Co.* v. *Assum*, where the policy sued on covered an entire stock of goods, and there were two other policies, covering each distinct parts. It was held to be a case of double insurance, which vitiated the entire policy on notice not being given.

But, in our judgment, the matter must be considered as settled by 5 Ohio, 461, *Harris* v. *The Ohio Ins. Co.* There, one policy covered a store and stock of goods therein—the other covered the stock of goods only. And it was held a case of double insurance, which avoided the policy—the question being, as the court say, whether the same risks are covered by both policies.

Upon the whole case, we are of opinion that error has intervened in the record of this judgment, for the reasons given, and that the judgment shall be reversed, with costs.

Judgment of special term reversed, and cause remanded for a new trial.